# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**DAVID JONES,**

    **Plaintiff,**

**vs.**                                              **No. CIV 00-1339 JHG/LCS**

**UNITED STATES OF AMERICA,**
**UNITED STATES BORDER PATROL**
**AND ONE JOHN DOE, BORDER PATROL**
**AGENT,**

    **Defendants.**

## MEMORANDUM OPINION

**THIS MATTER** is before the Court on Defendant United States of America's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, filed November 21, 2001.[1] Having reviewed the motion, the memoranda in support and in opposition, and the applicable law, the Court finds that the motion is well taken and will be GRANTED.

### I. Undisputed Facts[2]

On February 3, 1997, United States Border Patrol Agents Michael K. Dalton and Enrique Davila were working at the border patrol checkpoint located on Interstate 10, west of Las Cruces, New Mexico. During that day, a blue van came through the checkpoint. The Border Patrol agents

---

[1] The parties have submitted affidavits and deposition evidence for the Court's consideration. Having considered this evidence, the Court will treat Defendant's motion as a summary judgment motion rather than a motion to dismiss.

[2] In Plaintiff's response to Defendant's Summary Judgment Motion, Plaintiff accepted Defendants' statement of facts with the exception of Agent Davila's claim that he was dressed in his Border Patrol uniform. Pl.'s Resp. at 2.

stopped and searched the van.  Although the agents found no contraband, Agent Dalton suspected illegal activity.  Approximately ten minutes after the van left the checkpoint, Agent Dalton followed the van to see if the van had turned back east toward the checkpoint.

Agent Dalton found the van parked in a parking lot of a bar/trailer park located approximately four miles from the checkpoint adjacent to Interstate 10.  This area is known by Border Patrol to be used by illegal aliens attempting to avoid the checkpoint.  Agent Dalton found the van empty, the doors unlocked, and the keys on the center console.  Agent Dalton radioed back to the checkpoint to relay this information.  Agent Davila and another Border Patrol agent went to the bar/trailer park to assist Agent Dalton.

The Border Patrol agents concluded the van had been left at the bar/trailer park for illegal aliens who were probably circumventing the checkpoint.  The agents decided to have Agent Davila wait inside the van for the illegal aliens while Agent Dalton observed from the south end of the interstate.  The third Border Patrol agent returned to the checkpoint.

At approximately 11:45 p.m., while sitting in the van, Agent Davila saw a man walk toward the van, circle the van and approach the driver's side door.  Agent Davila quickly exited the van through the driver's side door and confronted the man.  When the man started backing away, Agent Davila grabbed the man from his shirt collar.  Agent Davila identified himself as a Border Patrol agent.  Plaintiff then identified himself as a resident of the area.  Agent Davila told Plaintiff he was a Border Patrol agent on official business and instructed Plaintiff to leave.  Plaintiff then left.

At approximately 12:15 a.m., a car approached the van where Agent Davila was sitting and parked adjacent to the van.  The driver honked the horn and backed up behind the van.  Assuming the car was somehow connected to the van, Agent Davila got out of the van and approached the

2

car. Agent Davila identified himself as a Border Patrol agent and asked the individuals in the car what they were doing. The individuals identified themselves as being residents of the area and Agent Davila instructed them to leave. The individuals drove to a trailer behind the bar.

At approximately 1:00 a.m., a New Mexico State Police vehicle entered the bar parking lot and parked behind the van. The police officer approached the van and with his flashlight looked into the van. Agent Davila was lying on the floor of the van. Agent Davila overheard the State Police officer radio to the dispatcher that everything was fine. Agent Davila spoke to the police officer and told him he was working an alien smuggling case. The police officer told Agent Davila he was responding to a call that a person in the area was posing as a federal officer in an unmarked van. The police officer then drove to the back of the bar. Agent Davila believed the police officer was going to notify the residents that there was no cause for alarm.

Agent Davila then sat with the police officer in his vehicle until approximately 2:00 a.m. when ten males approached the van and attempted to enter it. At that time, Agent Davila and the police officer approached the van, questioned the individuals and determined they were illegal aliens. The individuals were transported to the checkpoint.

## II. Standard of Review

This Court will grant summary judgment when there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The movant carries the burden of establishing there are no genuine issues of material fact, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970), but may discharge its burden by showing there is an absence of evidence to support the non-movant's case, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant meets its burden, the burden shifts to the non-movant to demonstrate a genuine issue for trial on a material matter. *Bacchus Indus., Inc. v. Arvin Indus.,*

*Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  In making its summary judgment determination, the court looks at the pleadings and documentary evidence in the light most favorable to the non-movant, *Deepwater Invs., v. Jackson Hole Ski Corp.* 938 F.2d 1105, 1110 (10th Cir. 1991), and the movant must show beyond a reasonable doubt it is entitled to summary judgment, *Hicks v. City of Watonga, Okla.*, 942 F.2d 737, 743 (10th Cir. 1991).  However, once the burden shifts to the non-movant, that party may not rest on its pleadings but must set forth specific facts showing there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.  *Celotex Corp.*, 477 U.S. at 324.  However, "the mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48(1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*  If the non-movant cannot make such a showing, after adequate time for discovery, summary judgment is mandated.  *Id.* at 322.

### III.  Discussion

Under the Federal Tort Claims Act (FTCA), the United States waives its sovereign immunity for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S. C. § 1346(b)(1).  The FTCA exempts intentional torts from its sovereign immunity waiver but expressly allows actions against the United States for claims of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" arising out of "acts or omissions of investigative or law enforcement officers of the United States Government."  28 U.S.C. § 268(h).

However, "in the context of activities peculiar to law enforcement, some courts have established exceptions to the principle that the proper comparison in FTCA cases is to private, nongovernment individuals." *Ortiz v. United States Border Patrol*, 39 F.Supp.2d 1321, 1324 (D.N.M. 1999), *aff'd*, 210 F.3d 390 (10th Cir. 2000). This law-enforcement exception applies where there is no analogous private activity for the activity in which the federal officer was engaged. *Id.* For example, in *Hetzel v. United States*, 43 F.3d 1500, 1503-04 (D.C.Cir. 1995), the court found that no private individual had the authority to engage in a high-speed chase of a suspected felon, and therefore there was no analogous private activity upon which to premise liability under the FTCA. The court then abandoned the private individual analogy and looked to the standards of care applicable to government employers under state law. *See, also, Aguilar v. United States*, 920 F.2d 1475, 1477 (9th Cir. 1990)(private individuals do not direct traffic on public highways; therefore examination of liability of state and municipal entities under like circumstances is necessary); *Crider v. United States,* 885 F.2d 294, 296-97 (5th Cir. 1989)(private persons do not arrest or detain suspects; liability for failure to do so must be premised, if at all, on examination of liability imposed on state or municipal entities under state law).

In this case, Border Patrol Agent Davila was engaged in a function unique to law enforcement. Agent Davila was investigating whether the abandoned van was involved in criminal activity, i.e., whether the van was left for the use of illegal aliens. There is no dispute that New Mexico law applies. Therefore, the Court must apply the standard of care applicable to a law enforcement officer in New Mexico. In New Mexico, law enforcement officers have "the duty to investigate all violations of the criminal laws of the state which are called to the attention of any such officer or of which he is aware . . . ." N.M.Stat.Ann. §29-1-1 (Michie 1978). Moreover, under the New Mexico Tort Claims Act, law enforcement officers are liable for "personal injury,

5

bodily injury, wrongful death or property damage resulting from assault, battery . . . violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties. N.M.Stat.Ann. § 41-4-12 (Michie1996). Liability for acts or omissions under the Tort Claims Act are "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." N.M.Stat.Ann. § 41-4-2(B)(Michie 1996); *see also, Cross v. City of Clovis*, 107 N.M. 251 (1988)(law enforcement officer has duty in any activity undertaken to exercise for the safety of others that care ordinarily exercised by a reasonably prudent and qualified officer in light of the nature of what is being done).

In this case, Plaintiff seeks damages under the FTCA for a claim based on assault [3] and battery.[4] Having reviewed the facts and the applicable law, the Court finds that Agent Davila exercised the care that a reasonably prudent and qualified officer would exercise under the same circumstances. It was reasonable for Agent Davila to confront Plaintiff when Plaintiff approached the van the first time. Plaintiff contends Agent Davila grabbed him by the neck while Agent Davila maintains he grabbed Plaintiff by his shirt collar. Even accepting Plaintiff's version of the facts, Agent Davila's actions were reasonable. Agent Davila suspected the van was connected to criminal activity. Therefore, when Plaintiff approached the van, it was reasonable for Agent Davila to suspect Plaintiff of illegal activity. It also was reasonable for Agent Davila to restrain Plaintiff

---

[3] An assault requires a "threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery." N.M.Stat.Ann. § 30-3-1(B)(Michie 1994).

[4] A battery is the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner. N.M.Stat.Ann. § 30-3-1(B)(Michie 1994).

6

when Plaintiff attempted to run away. The force used by Agent Davila was minimal and necessary under the circumstances. Additionally, Plaintiff admits Agent Davila identified himself as a Border Patrol agent on official business while he restrained Plaintiff. Def.'s Ex. C. Based on Plaintiff's admission that Agent Davila informed him that he was a Border Patrol agent on official business, the fact that Agent may or may not have been in his Border Patrol uniform is immaterial. Agent Davila briefly detained Plaintiff and released him when Plaintiff identified himself. Def.'s Ex. A & C.

Agent Davila's actions also were reasonable during the second incident when Plaintiff approached the van a second time. At about 12:15 a.m., Plaintiff and two females approached the van in a car. The driver honked the horn and backed up behind the van. Plaintiff contends Agent Davila got out of the van with his weapon drawn, pointed the weapon at them and requested they identify themselves. Agent Davila again identified himself as a Border Patrol agent on official business, and, after the occupants of the car identified themselves, he told them to leave.

In light of the circumstances, Agent Davila's actions were reasonable. Suspecting the occupants of the car were involved in criminal activity, it was reasonable for Agent Davila to approach the van cautiously with his gun drawn and ask for identification. Not knowing what the occupants of the car were up to or whether they had guns, Agent Davila acted reasonably in protecting himself while he investigated the situation. Having previously informed Plaintiff of his identity and the nature of his business, it was unreasonable for Plaintiff to return to the van.

Finally, Plaintiff attempts to raise a criminal trespass claim against Agent Davila in his response to the motion for summary judgment. However, Plaintiff's Amended Complaint and the June 4, 2001 Initial Pretrial Report only state claims for assault and battery. At this stage of the proceedings, Plaintiff cannot raise a criminal trespass claim. Moreover, Agent Davila had a right

to be on the property because he had a duty to investigate further any criminal activity. *See e.g. Romero v. Sanchez*, 119 N.M. 690, 693 (1995)(officer was entitled to be on property of owner under duty to investigate criminal violations so as to preclude owner's § 1983 action brought on basis of criminal trespass). It is also doubtful that Plaintiff has standing to bring a criminal trespass claim against Agent Davila. Accordingly, Defendant's Motion for Summary Judgment is granted.

    A judgment in accordance with this memorandum opinion will be entered.

_____
**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**